### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAMMY LIDDELL** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:06CV801-HSO-JMR** |
| | § | |
| **NORTHROP GRUMMAN** | § | |
| **SHIPBUILDING, INC.** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Partial Summary Judgment [388]

filed September 24, 2010, in the above-captioned cause by Defendant Northrop

Grumman Shipbuilding, Inc. ["Defendant"].  Plaintiff Tammy Liddell ["Plaintiff"]

has filed a Response [390] in opposition to Defendant's Motion, and Defendant has

filed a Rebuttal [391].  After due consideration of the record, the submissions on file,

and the relevant legal authorities, the Court finds that, because some of Plaintiff's

claims arising on or before January 21, 1997, are subject to the doctrine of judicial

estoppel, Defendant's Motion for Partial Summary Judgment [388] should be

granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

An initial Complaint [1-1] was filed in this Court on March 21, 2001, and a

First Amended Complaint was filed on April 26, 2001, naming eleven (11)

individuals and the Ingalls Workers for Justice as Plaintiffs.  Plaintiff Tammy

Liddell was not a named Plaintiff in the original suit.  Named Defendants were

Ingalls Shipbuilding, Inc., Litton Industries, and Northrop Grumman.  All three

Defendants filed a Motion to Dismiss [7-1] on June 20, 2001, pursuant to Federal Rule of Civil Procedure 12.   As detailed in its Memorandum Opinion [16-1] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17-1], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.   In their Motion to Alter or Amend Judgment filed on March 14, 2002 [18-1], the remaining Plaintiffs moved the Court to reconsider its entry of judgment dismissing their class action allegations.  In a separate Motion for Entry of a Separate Judgment filed April 22, 2002 [23-1], the remaining Plaintiffs sought to appeal the Court's prior order.  The Court denied both of these Motions by Order entered on July 10, 2002 [26-1].

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27-1], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  For the first time, Plaintiff Tammy Liddell was identified as a putative class member and as a Plaintiff-Intervenor in the proposed "Complaint in Intervention for Declaratory Judgment and Injunctive Relief and Damages." Ex. "A" [27-2], att. to Mot. for Leave to File a Compl. in Intervention.  The Court granted leave to amend on January 28, 2003 [40-1], and the Complaint in Intervention was filed on February 13, 2003 [42-1], naming an additional 171 Plaintiffs-Intervenors, including Plaintiff Tammy Liddell.  On April 7, 2003, with leave of Court, Plaintiffs collectively filed a Second

Amended Complaint [48-1].

On May 8, 2003, Defendant filed a Motion to Sever [50-1], seeking to sever each individual Plaintiff's claims into a separate case, consolidated solely for the purpose of discovery, which the Court denied, without prejudice, pursuant to an Order signed March 31, 2004 [56-1]. On June 30, 2006, the Court issued an Order to Show Cause [330-1] as to why Plaintiffs' claims should not be severed into separate causes of action. Plaintiffs filed a collective Response [342-1] to this Order on July 20, 2006. Defendant subsequently filed a Motion to Sever on August 4, 2006 [349-1], which the Court granted on August 17, 2006 [360-1], and required Plaintiffs to file separate complaints. On October 23, 2006, following severance of her claims, Plaintiff filed an Individual Complaint for Injunctive and Declaratory Relief and Damages [362-1]. Defendant filed its Answer on October 27, 2006 [363-1].

In 2008, the Court entered an Order administratively closing all Northrop Grumman cases while the claims of all but fourteen (14) Plaintiffs were heard and resolved through arbitration. Plaintiff was one (1) of the fourteen (14) who opted out of the arbitration proceedings. Upon conclusion of the various arbitrations, the Court conducted a status conference on August 23, 2010, following which it reopened the above captioned cause, determined that all discovery had been completed, and set this case for trial to commence on the Court's October 2011 trial calendar. Defendant filed the instant Motion for Partial Summary Judgment [388]

on September 24, 2010.[1]

After a hearing on May 12, 2011, Plaintiff's counsel was allowed to withdraw by Text Order dated May 25, 2011.  In light of this withdrawal, the trial in this matter was continued to the Court's February 2012 trial calendar.  Plaintiff is now proceeding *pro se.*

In her Complaint, Plaintiff seeks injunctive and declaratory relief to prevent alleged continuing, systemic, and unjustified race discrimination by Defendant, with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees.  Pl.'s Compl., ¶1 [362-1].  Plaintiff, a Black employee of Defendant for over 18 years, *id.*, ¶ 3, alleges severe, pervasive, and ongoing harassment through longstanding maintenance of a racially hostile work environment, *id.*, ¶¶ 1, 29–35.  Plaintiff charges that she has been denied promotions by Defendant because of her race.  *Id.*, ¶¶ 20–24.  Plaintiff further claims that she was subjected to racial job tracking.  *Id.*, ¶ 26.  In addition to injunctive and declaratory relief, Plaintiff requests both compensatory and punitive damages.  *Id.*, ¶ 44(i).

In support of its present Motion for Partial Summary Judgment, Defendant does not argue the merits of Plaintiff's claims, but rather contends that all claims arising on or before January 21, 1997, are barred by the doctrine of judicial estoppel and, consequently, that it is entitled to partial summary judgment as to these

---

[1]The instant Motion is timely reasserted pursuant to the Court's Order entered on May 27, 2008 [377-1].

claims.  Def.'s Mem. in Supp. of Mot. for Partial Summ. J., p. 10.

## II. DISCUSSION

A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  In applying this standard, the Court views evidence in the light most favorable to the non-movant.  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)).

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

B.    Chapter 7 and Judicial Estoppel

The doctrine of judicial estoppel "'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some

earlier proceeding.'" *Hall v. GE Plastic Pacific PTE, Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ergo Science, Inc., v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)).  "The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)(citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)(internal quotation marks, parentheses, and citation omitted)).

Generally, judicial estoppel is "applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)).   The Supreme Court has articulated three factors to evaluate in determining whether the doctrine of judicial estoppel should apply:

> (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)).

The Fifth Circuit recognizes three factors which must be satisfied in order to invoke judicial estoppel: "(1) the party's position must be clearly inconsistent with its previous one; (2) the court must have accepted the party's earlier position; and (3) the non-disclosure must not have been inadvertent." *Kane v. National Union Fire Ins. Co.*,

535 F.3d 380, 386 (5th Cir. 2008)(quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Based on the record presented, and for the reasons discussed in more detail below, the Court is persuaded that the foregoing principles of judicial estoppel apply to the present case. *See Reed v. City of Arlington*, 2011 WL 3506100 *3 (5th Cir. 2011); *In re Coastal Plains, Inc.*, 179 F.3d at 205; *Cargo v. Kansas City Southern Ry. Co.,* 408 B.R. 631, 639 (W.D. La. 2009).

Plaintiff filed for Chapter 7 bankruptcy protection on January 21, 1997. *See* Voluntary Pet., attached as Ex. "G" to Def.'s Mot. for Partial Summ. J. All property, including any accrued causes of action, belonging to a plaintiff as of the commencement of a bankruptcy case, become property of the bankruptcy estate as of commencement of the bankruptcy case. *See* 11 U.S.C. § 541(a); *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997). Plaintiff did not list any potential claim arising out of the facts of this lawsuit in her bankruptcy schedules. Plaintiff received a discharge on May 8, 1997. *See* Discharge of Debtor, Ex. "H" to Def.'s Mot. for Partial Summ. J.

Plaintiff does not dispute these material facts cited in Defendant's Motion for Partial Summary Judgment. However, she argues that the application of judicial estoppel is not appropriate in this case. Plaintiff points out that her bankruptcy was discharged and closed around four years before the filing of the original class action complaint in this matter, and that she could not have known in 1997 that she would be attempting to participate in a class action lawsuit in 2001. Pl.'s Resp., p. 1. Plaintiff maintains that "[i]t was not mandatory that plaintiff disclose every act of discrimination, or 'claim,' in 1997 even if such claims might later form the basis of a

class action, or part of a 'pattern and practice' suit." *Id.* She argues that "[t]he 1997 bankruptcy does not cut off all antecedent 'claims' which may later be made the basis of a suit," and that "[t]here is no proof that plaintiff understood or appreciated, in 1997, that she even had a 'claim,' or a contingent claim." *Id.* at pp. 1–2. Alternatively, Plaintiff requests additional time to attempt to re-open her 1997 bankruptcy, and/or to allow the trustee to intervene on behalf of the creditors. *Id.* at p. 2.

Plaintiff signed her bankruptcy Petition, as well as her bankruptcy schedule, under penalty of perjury. On May 8, 1997, the Bankruptcy Court granted Plaintiff a discharge from her debts. *See* Discharge of Debtor, Ex. "H" to Def.'s Mot. for Partial Summ. J. The record unequivocally demonstrates that Plaintiff has never filed or sought to amend or correct her bankruptcy schedules to include her discrimination claims against Defendant in this case. No genuine issues of material fact exist on this point which would preclude a grant of summary judgment.[2]

In determining whether Plaintiff is judicially estopped from asserting certain claims against Defendant, namely those that accrued on or before January 21, 1997, the Court must consider: (1) whether Plaintiff's position now is plainly inconsistent with her prior legal position; (2) whether Plaintiff convinced a court to accept that prior position; and (3) whether Plaintiff would gain an unfair advantage or impose a detriment on others and whether her actions were inadvertent. *See Kane v. Nat'l*

---

[2]As *Reed v. City of Arlington*, 2011 WL 3506100 (5th Cir. Aug. 11, 2011), makes clear, the trustee's duty to pursue a cause of action is distinct from the debtor's obligation to disclose an asset. Only the Plaintiff/Debtor's claims are currently before the Court.

*Union Fire Ins.*, 535 F.3d 380, 386 (5th Cir. 2008); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.  2005)(citing *In re Coastal Plains*, 179 F.3d at 206-07)).

      1.    <u>Is Plaintiff's Position Plainly Inconsistent with Her Prior Legal Position?</u>

It is clear in the Fifth Circuit that if a plaintiff fails to disclose a cause of action to a bankruptcy court, that plaintiff takes an inconsistent position by later pursuing the undisclosed cause of action.  *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004); *see also Jethroe*, 412 F.3d at 600.

Plaintiff filed for Chapter 7 Bankruptcy protection on January 21, 1997,  and did not list her discrimination claim in either her Petition or her bankruptcy schedule.  *See* Pet. and Schedules, Ex. "G" to Def.'s Mot. for Partial Summ. J.  At the time these documents were filed, Plaintiff signed a declaration attesting to the truth and correctness of the Debtor's Schedules, under penalty of perjury.  *Id.* at p. 17.   In Paragraph 20 of her Bankruptcy Schedule B, Personal Property, Plaintiff was required to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." *Id.* at p. 6.  Plaintiff marked an "X" in the column indicating "None."  *Id.*  Pursuant to this representation made to the Bankruptcy Court, Plaintiff received a discharge on May 8, 1997.  *See* Discharge of Debtor, Ex. "H" to Def.'s Mot. for Partial Summ. J.

After reviewing Plaintiff's bankruptcy Petition and schedules, it is evident to this Court that Plaintiff did not identify any potential claim arising out of the facts surrounding this lawsuit in to the Bankruptcy Court.  Therefore, the threshold inquiry is whether Plaintiff was required to list these potential claims.  This question turns on

whether any of Plaintiff's claims asserted in this case had accrued at the crucial time, the time she filed the Chapter 7 bankruptcy Petition. "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997) (quoting *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 721 (1946)).

Plaintiff alleges that, as of October 2006, she had been employed by Defendant for over 18 years. Pl.'s Compl., at ¶3. During this time, Plaintiff claims that she suffered race discrimination and was subjected to a hostile work environment. She advances claims against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and Section 1981 of the Civil Rights Act of 1991, 42 U.S.C. § 1981. *Id.*, ¶¶ 1–2. Plaintiff's racial discrimination claims fall into three categories: (1) denial of promotions; (2) denial of participation in sea trials and ship checks; (3) racial job tracking; (4) imposition of discipline; (5) failure to train; and (6) hostile work environment. *Id.*, ¶¶ 19–35.

a.    *Hostile Work Environment Claim*

In its Brief, Defendant maintains that claims arising on or before January 21, 1997, are barred by judicial estoppel and must be dismissed. If Plaintiff's hostile work environment allegations were viewed as discrete acts, then Defendant would be correct in focusing its analysis on discrete events which occurred before that date. However, this is not always the case. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts.

-10-

Their nature involves repeated conduct. . . .  The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . .  Such claims are based on the cumulative effect of individual acts.").  Therefore, even though Plaintiff does list certain discrete incidents which occurred prior to January 21, 1997, *see id.*, ¶ 29, the Court must consider whether Plaintiff's hostile work environment claim had accrued on or before January 21, 1997.[3]

In order to succeed on a hostile work environment claim under Title VII, Plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt

_____

[3]In its Rebuttal [391], Defendant cites the Court's decision in *Bridgewater v. Northrop Grumman Ship Systems, Inc*., No. 1:06CV769-HSO-JMR, 2007 WL 4224212 (S.D. Miss. November 29, 2007), wherein this Court held that Mr. Bridgewater was judicially estopped from pursuing his monetary claims against Defendant, even though he had filed a Chapter 7 petition several years before moving to intervene in this same litigation.  A key distinction between Mr. Bridgewater's claims and Ms. Liddell's claims, however, is the date of accrual of those claims.  The Court explicitly held in *Bridgewater* that "[b]ecause all of Plaintiff's claims are related to his employment with Defendant, all of his claims against Defendant had accrued on or before his retirement date of October 30, 1997, which was before he filed his Chapter 7 bankruptcy petition in 1998." *Bridgewater*, 2007 WL 4224212, at *6.  The Court therefore concluded that all of these claims should have been listed on Mr. Bridgewater's schedules of assets. *Id.*  The Court must likewise consider which, if any, of Ms. Liddell's claims had accrued on the date she filed her Chapter 7 petition, as she was still employed by Defendant at that time.

remedial action.  *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).  An unlawful employment practice has occurred when "the employer has engaged in enough activity to make out an actionable hostile work environment claim." *Morgan*, 536 U.S. at 117.

In support of its Motion for Partial Summary Judgment, Defendant has not submitted any discovery responses or deposition transcripts which could provide insight into when Plaintiff's allegations supporting her hostile work environment claim accrued.  The Court is left only with Plaintiff's Complaint for insight on this topic. Plaintiff contends that she has been "exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS," of which NGSS knew or should have known, but which it allegedly failed to prevent or promptly correct.  Pl.'s Compl., ¶ 29.  Plaintiff asserts that she has

> not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.

*Id.*  Plaintiff lists the following instances of such exposure:

> a) Plaintiff has seen offensive racially derogatory graffiti on the restroom walls on both banks.
> b) Plaintiff has seen the words "nigger" written on the restroom walls through the late 1990s.

*Id.*

Based on the record submitted in support of this Motion for Partial Summary Judgment, and viewing the evidence in the light most favorable to the non-movant, the Court finds that Defendant has not met its initial summary judgment burden of

demonstrating that Plaintiff's alleged hostile work environment claim had accrued before she filed her bankruptcy Petition on January 21,1997. Defendant's Motion for Partial Summary Judgment will therefore be denied as to Plaintiff's hostile work environment claim.

      *b.*    *Discrete Discriminatory Act Claims*

Plaintiff's remaining claims involve discrete discriminatory acts, specifically her claims as to (1) denial of promotions; (2) exclusion from sea trials and ship checks; (3) racial job tracking; (4) imposition of discipline; and (5) failure to train. Unlike hostile work environment claims, discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified. Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice. *Morgan,* 536 U.S. at 114.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff is required to establish, by a preponderance of the evidence, a *prima facie* case of racial discrimination in employment by showing that (1) she was a member of a protected group; (2) she was qualified for the position he held; (3) she suffered an adverse employment action, such as termination; and (4) she was replaced by individuals outside the protected class. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (citing *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003)). Then, the burden-shifting analysis proceeds. *Id.* "Adverse employment action"

in this context encompasses decisions such as hiring, granting leave, discharging, promoting, and compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

In this case, Plaintiff alleges that she applied on numerous occasions for promotive positions for which she was fully qualified, but was not selected due to her race. Pl.'s Compl., at ¶19. Plaintiff's Complaint lists alleged failures to promote in or about 1996, 1998, and 2000. *Id.* Plaintiff also maintains that she was subjected to "racial job tracking" by being assigned jobs which were more difficult, dirtier, and/or more dangerous than those of white employees, including in 1990 and 1998. *Id.*, at ¶ 25.

At least some of Plaintiff's discrete claims, namely the alleged denial of promotion in 1996 and the "racial job tracking" in 1990, accrued before January 21, 1997. Thus, these claims should have been revealed on Plaintiff's schedules of assets. To date, Plaintiff has never sought to amend or correct her schedules to disclose these claims to the Bankruptcy Court.

Plaintiff's non-disclosure of these claims amounts to an assertion to the Bankruptcy Court that these assets did not exist, which is inconsistent with her current position in this case. The first prong of the test for applicability of judicial estoppel, namely whether the position of the party against whom estoppel is sought is plainly inconsistent with its previous position, is clearly satisfied with respect to these claims. *Jethroe*, 412 F.3d at 600 (holding, in case by former employee against employer alleging discrimination in violation of Title VII, that plaintiff's non-disclosure of

existence of pending EEOC complaint when she filed her Chapter 13 petition and of filing of lawsuit during pendency of her bankruptcy satisfied first element of judicial estoppel); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (holding that omission of a personal injury claim from Chapter 7 debtors' mandatory bankruptcy filings is tantamount to representation that no such claim existed, and that subsequent action in state court is blatant inconsistency that readily satisfies first prong of judicial estoppel inquiry).

  2. <u>Did the Previous Court Accept Plaintiff's Earlier Position?</u>

As for whether Plaintiff convinced a court to accept her prior position, it is beyond dispute that the Bankruptcy Court granted her requested relief of a discharge based upon her representations to that Court.  This second element of judicial estoppel only requires "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."  *In re Coastal Plains*, 179 F.3d at 206 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)).  This Court concludes that, by granting Plaintiff a discharge, the Bankruptcy Court relied, at least in part, on Plaintiff's bankruptcy schedules as presented in January 1997.  Therefore, the second prong is satisfied.  *In re Superior Crewboats, Inc.*, 374 F.3d at 335; *see also Mack v. Lester Coggins Trucking, Inc.*, No. 2:07cv36-KS-MTP, 2008 WL 190740, *2 (S.D. Miss. 2008).

  3. <u>Did Plaintiff Gain an Unfair Advantage, Impose an Unfair Detriment, or Act Inadvertently?</u>

Plaintiff would clearly gain an unfair advantage by receiving a discharge while

retaining her pre-January 21, 1997, claims as assets.  "Judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed v. City of Arlington*, 2011 WL 3506100 *2 (5th Cir. 2011).   The Fifth Circuit has stated that "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains*, 179 F.3d at 207-08 (citing 11 U.S.C. § 521(1)).   In fact, the Fifth Circuit has noted that "the importance of this disclosure duty cannot be overemphasized." *Id.* at 208 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) (discussing importance of disclosure to creditors and to bankruptcy court)).   In bankruptcy cases, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id.* at 210 (emphasis in original)(internal citations omitted).

While Plaintiff states in her Response [390] dated October 26, 2010, that she would like additional time to re-open her 1997 bankruptcy, to date Plaintiff has not moved for any relief, of any kind, in the Bankruptcy Court.  While Plaintiff claims that she could not have known in 1997 that she would be attempting to participate in a class action lawsuit in 2001, "knowledge" in the judicial estoppel context simply means knowledge of facts giving rise to Plaintiff's claims, not of Plaintiff's duty to report such

-16-

claims to the Bankruptcy Court.  *In re Coastal Plains*, 179 F.3d at 212.

"Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.* at 210.  The law is clear that a lack of awareness of the statutory disclosure duty is not sufficient to avoid the application of judicial estoppel in this context.  *See id.*; *see also Kamont v. West*, 83 F. App'x 1, *3  (5th Cir. October 31, 2003)(holding that debtor "must show that she was unaware of the facts giving rise to her claim, not of her duty to report her claim").  Some of Plaintiff's claims against Defendant had clearly accrued as of the date she filed for Chapter 7 bankruptcy protection; therefore, Plaintiff cannot argue that she did not have knowledge of the facts giving rise to these particular claims as of the date of her bankruptcy filing.

With respect to the question of any "motive for concealment" of these claims, Plaintiff was granted a discharge on May 8, 1997.  *See* Discharge of Debtor, Ex. "H" to Def.'s Mot. for Partial Summ. J.  Plaintiff's failure to disclose her alleged discrete Title VII and section 1981 claims against Defendant in the course of filing her Chapter 7 bankruptcy constituted a representation to the Bankruptcy Court that she had no such potential causes of action.  *See In re Costal Plains*, 179 F.3d at 210.  Within the meaning of the case law cited above, Plaintiff had both an incentive not to disclose her claims against Defendant, and knowledge of the facts of some of the present claims.  Thus, Plaintiff's non-disclosure was not "inadvertent" as contemplated by the Fifth Circuit in *Coastal Plains*.  *See also Young v. Town of Greenwood*, 2009 WL 1924192 (W.D. La. 2009); *Benton v. Ryan's Family Steakhouse*, 222 F.R.D. 112, 114 (S.D. Miss.

-17-

2004). She would also gain an unfair advantage by having failed to reveal these claims on her bankruptcy schedules. Therefore, the elements necessary for application of judicial estoppel are present here, and partial summary judgment should be granted in favor of Defendant as to Plaintiff's discrete monetary damage claims accruing on or before January 21, 1997, namely the alleged denial of promotion in 1996 and the "racial job tracking" in 1990.

    4.    <u>Is Defendant Entitled to Prevail as a Matter of Law on Plaintiff's Non-Monetary Claims?</u>

In addition to her damages claims, Plaintiff's Complaint advances the following requests for following injunctive and declaratory relief:

(a)    Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 19 through 36 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

(b)    Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

(c)    Issue a preliminary and permanent injunction enjoining NGSS . . . from engaging in each of the unlawful practices set forth in paragraphs 16 through 34 and from continuing other practices found to be in violation of federal law;

(d)    Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(e)    Enter a permanent and mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

(f)     Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. . . .

(g)     Require that NGSS institute a policy that affords equal opportunities for training and development. . . .

(h)     Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff. . . .

Pl.'s Compl., at pp. 13–14.

Defendant contends that judicial estoppel bars all of Plaintiff's claims which accrued on or before the date of her bankruptcy filing, including those claims seeking declaratory and injunctive relief.   It does not seek to distinguish between claims for damages and claims for declaratory and injunctive relief.

While the Fifth Circuit has not directly addressed this issue, other courts have held that judicial estoppel does not preclude a debtor-plaintiff from seeking injunctive relief under certain circumstances.  *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 & n.3 (11th Cir. 2002)(noting that "[t]he facts of a particular case will always guide a court's analysis of this issue," and holding Chapter 13 debtor-plaintiff was judicially estopped from pursuing monetary damages for his discrimination claim, but holding that plaintiff was not judicially estopped from pursuing injunctive relief, and also noting that "knowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all likelihood, have changed the bankruptcy court's determination about how to proceed

-19-

with the debtor's bankruptcy.").  However,

> . . . [t]he Supreme Court has refused to 'establish inflexible prerequisites
> or an exhaustive formula for determining the applicability of judicial
> estoppel,' stating instead that different considerations 'may inform the
> doctrine's application in specific factual contexts.' *Id*. at 751; *see also* 18
> Moore's § 134.31 at 73 ('Because the doctrine is equitable in nature, it
> should be applied flexibly, with an intent to achieve substantial justice....
> Application of the doctrine of judicial estoppel should be guided by a
> sense of fairness, with the facts of the particular dispute in mind.').

*Reed v. City of Arlington*, 2011 WL 3506100 at *2 (quoting *New Hampshire v. Maine,*
532 U.S. 742, 751 (2001)).

In the context of this case, the Court is of the view that knowledge of Plaintiff's

claims would have added monetary value to Plaintiff's bankruptcy estate.  In addition,

as this Court found when rendering its decision in *Bridgewater v. Northrop Grumman*

*Shipbuilding Systems*, 2007 WL 4221212  (S.D. Miss. November 29, 2007), the case of

*Lett v. Reliable Ruskin*, 2006 WL 2056582 (M.D. Ala. July 24, 2006), is instructive.  In

*Lett*, the district court concluded that the "key is to examine the demands made by the

Plaintiff and then determine if success on the merits would result in any value being

added to the debtor Plaintiff's estate." *Id*. at *7.  Ultimately, that court concluded that

a Chapter 13 debtor-plaintiff is judicially estopped from seeking relief in the form of

a promotion because in a Chapter 13 bankruptcy, projected disposable income is

allotted to make payments under a bankruptcy plan, and because a promotion would

increase debtor-plaintiff's income, this would have added value to the bankruptcy

estate.  *Lett*, 2006 WL 2056582, at *7 (citing *Barger v. City of Cartersville, Ga.*, 348

F.3d 1289, 1297 (11th Cir. 2003)).

The Court here is of the view that success on the merits of those of Plaintiff's

claims for declaratory judgment and injunctive relief could result in her receiving back pay, salary adjustments, and adjustment of retirement benefits.  These would have added value to her bankruptcy estate.  For this reason and in order to further achieve substantial justice, Plaintiff should be judicially estopped from pursuing any of these claims which accrued on or before January 21, 1997, namely the alleged denial of promotion in 1996 and the "racial job tracking" in 1990.

### III. <u>CONCLUSION</u>

As discussed in more detail above, the Court finds that Plaintiff is judicially estopped from pursuing her discrete claims against Defendant for denial of promotions, exclusion from sea trials and ship checks, racial job tracking, imposition of discipline, and failure to train, which accrued on or before January 21, 1997, specifically the alleged denial of promotion in 1996 and "racial job tracking" in 1990.  She is not judicially estopped from pursuing her hostile work environment claim and any other discrete claims.  Defendant's Motion for Partial Summary Judgment will be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons stated herein, Defendant's Motion for Partial Summary Judgment [388] filed September 24, 2010, should be and hereby is **GRANTED IN PART,** to the extent it seeks dismissal of Plaintiff's discrete claims which accrued on or before January 21, 1997, specifically her claims for alleged denial of promotion in 1996 and "racial job tracking" in 1990, **and DENIED IN PART**, to the extent it seeks dismissal of Plaintiff's hostile work environment claim and any other discrete act claims.  Those of

Plaintiff's discrete claims identified above which accrued on or before January 21, 1997, are **DISMISSED WITH PREJUDICE**.

      **SO ORDERED AND ADJUDGED**, this the 29th day of August, 2011.

<u>*s/ Halil Suleyman Ozerden*</u>
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE