IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY LIDDELL | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV801-HSO-JMR |
| | § | |
| NORTHROP GRUMMAN | § | |
| SHIPBUILDING, INC. | § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment [407] filed by Defendant Northrop Grumman Shipbuilding, Inc.[1] ["NGSB"] on September 15, 2011.  Plaintiff Tammi Liddell ["Liddell"],[2] who is proceeding *pro se* in this matter, has filed a Response [409], and NGSB a Rebuttal [410].  After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that because Liddell is unable to maintain her claims as a matter of law, NGSB is entitled to summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A.    Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11) individuals

---

[1]Counsel for Defendant filed a Motion to Substitute Party on September 8, 2010. The Court granted said Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc." to "Northrop Grumman Shipbuilding, Inc."

[2]On the docket and in the previous pleadings, Plaintiff's first name has been spelled "Tammy."  However, Plaintiff's Response [409] indicates that her name is actually spelled "Tammi."

and the Ingalls Workers for Justice as Plaintiffs.  Liddell was not a named Plaintiff

in the original suit.[3]  Named Defendants were Ingalls Shipbuilding Company, Litton

Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of

February 27, 2002, and pursuant to its Judgment [17] of February 28, 2002, the

Court dismissed Plaintiffs' Thirteenth Amendment and Title VII claims, dismissed

Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers

for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in

Intervention [27], putative class members requested leave to intervene as Plaintiffs

in this action, pursuant to Federal Rule of Civil Procedure 24.  A Second Amended

Complaint [48] was filed on April 7, 2003.  Subsequently, NGSB's Motion to Sever

was granted by Order [360] entered August 17, 2006, which required Plaintiffs to file

separate complaints.  Following severance of her claims, Liddell filed her present

Complaint [362] on October 23, 2006.

In 2008, the Court entered an Order administratively closing all NGSB cases

while the claims of all but fourteen (14) NGSB Plaintiffs were heard and resolved

through arbitration.  Liddell was one (1) of the fourteen (14) who opted out of the

arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16,

2010, the above captioned cause was reopened.  Following a status conference held

on August 23, 2010, the Court reset this case for trial on its August 2011 trial

---

[3]Liddell was one (1) of one hundred forty-three (143) individuals who comprised the
Ingalls Workers for Justice and who filed a charge with the Equal Employment
Opportunity Commission on January 28, 2000.  EEOC Charge [407-1].

calendar.  By Text Order dated May 25, 2011, the Court granted Liddell's counsel's [398] Motion to Withdraw as Attorney, and reset this case on its February 2012 calendar.  Liddell is now proceeding *pro se*.

On September 24, 2010, NGSB filed a Motion for Partial Summary Judgment [388], seeking dismissal of Liddell's claims which arose on or before January 21, 1997, based on the doctrine of judicial estoppel.  The Court granted in part and denied in part NGSB's Motion in an Order [406] entered August 29, 2011.  The Court granted NGSB's Motion to the extent it sought dismissal of Plaintiff's discrete claims which accrued on or before January 21, 1997, specifically her claims for alleged denial of a promotion in 1996 and "racial job tracking" in 1990, and denied it to the extent the Motion sought dismissal of Plaintiff's hostile work environment claim and any other discrete act claims.  NGSB has now filed a [407] Motion for Summary Judgment seeking dismissal of the remaining claims advanced by Liddell.

B.    <u>Factual Background</u>

Tammi Liddell began working at NGSB's shipyard in April 1988, and continues to work there now.  Dec. 10, 2008, Dep. of Tammi Liddell, at p. 5, attached as Ex. "K" to Def.'s Mot. for Summ. J.  As of December 2008, she had not applied for any jobs outside of the shipyard.  In her Complaint [362], Liddell seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Compl., ¶ 1. Liddell alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work

environment.  *Id.*  In addition to injunctive and declaratory relief, Liddell seeks

compensatory and punitive damages.  *Id.*

## II. DISCUSSION

A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that "[t]he

court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a).  The purpose of summary judgment is "to pierce the

pleadings and assess the proof to determine if a genuine need for trial exists," *Beeler

v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003) (citing *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and to isolate and dispose of

factually unsupported claims or defenses, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).  "The party

moving for summary judgment must initially demonstrate the absence of a genuine

issue of material fact.  If the movant meets this burden, the nonmovant must go

beyond the pleadings and designate specific facts showing that there is a genuine

issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir.

1995) (citing *Celotex*, 477 U.S. at 323, 325).

To rebut a properly supported motion for summary judgment, the opposing

party must show, with "significant probative evidence," that there exists a genuine

issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  If the evidence

is merely colorable, or is not significantly probative, summary judgment is

appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1991)).

The existence of a factual dispute does not preclude summary judgment if the dispute is neither material nor genuine.  *Willis*, 61 F.3d at 315.  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).  In deciding whether summary judgment is appropriate, the Court views evidence of contradictory facts and all justifiable inferences in the light most favorable to the nonmoving party.  *Willis*, 61 F.3d at 315.

B.    Applicable Statutes of Limitations

Liddell's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are discussed below.

1.    Title VII

"Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs and this period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred."  *Vadie v. Miss. State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the timely

filing of a charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement that is similar to the statute of limitations, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling.  *Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of the charge of discrimination, absent a showing of waiver, estoppel, and/or equitable tolling.  *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts.").

Plaintiff raises the continuing violation doctrine in her Complaint.  Compl., ¶34.  NGSB argues that the continuing violation doctrine is not applicable here.  Def.'s Mem. Br. in Supp. of its Mot. for Summ. J., at p. 5. NGSB maintains that Liddell's hostile work environment claim is not based upon a series of related acts resulting from an organized scheme, but are "isolated, unrelated acts of harassment occurring over the course of her long shipyard career."  *Id.*

-6-

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001). It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation." *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)). This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2 (5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352. For discrete acts of discrimination, *Morgan* held that application of the continuing violation theory to these types of claims depends on the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar

an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period.  Therefore, in order to timely file suit under Title VII, the charge must be filed within 180 days of the alleged discrete discriminatory act.  42 U.S.C. § 2000e-5(e)(1).  The time limitations period set forth in Title VII commences with the date of "the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980)(holding that the present day effects of past discrimination are not actionable under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.").

The EEOC charge which led to this litigation was signed on January 14, 2000, and received by the EEOC on January 28, 2000.  Charge of Discrimination, attached as Ex. "A" to Def.'s Mot. for Summ. J.  NGSB maintains that the date filed is January 14, 2000, and that Liddell cannot recover under Title VII for alleged discrimination or harassment occurring before July 18, 1999.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 4.  There is Fifth Circuit precedent indicating that the filed date would be January 28, 2000, making the cutoff date August 1, 1999.  *See Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42 (5th Cir. 1985) (charge is "filed" under Title VII when it is received by EEOC) (citing 29 C.F.R. § 1601.13(a)).

The Court need not resolve this issue since, regardless of which date is used, the result here would not change.  Using the earlier date urged by Defendant, which is more favorable to Liddell, Liddell cannot recover under Title VII for any alleged discrete discriminatory acts which occurred before July 18, 1999.  *See Cruce*, 703 F.2d at 863-64.  Liddell further bears the burden of demonstrating that the continuing violation doctrine is applicable to any of her claims.  *Celestine*, 266 F.3d at 352.

    2.   <u>Section 1981</u>

Claims which assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable to claims raised under Title VII, with the exception that Section 1981 claims do not require exhaustion of remedies.  *Johnson v. Robinson Prop. Grp.,* 427 F.3d 987, 992 (5th Cir. 2005); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981, namely those made possible by a post-1990 Congressional enactment, are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Pre-existing causes of action are subject to a "borrowed" state limitations period, or the most analogous state tort statute of limitations.  *Id.*; *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir. 2008).

NGSB argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002),

the most analogous Mississippi statute of limitations, which would be three years, would apply to Plaintiff's claims for denial of promotions, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658.  Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an opportunity for a new and distinct relationship between the employee and the employer, making it subject to the shorter Mississippi state statute of limitations.  *See Jones*, 541 U.S. at 382; *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (applying Louisiana's one-year prescriptive period for tort actions to independent contractor's Section 1981 claim for failure to enter into a new contract with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns on whether the promotion was an opportunity for a new and distinct relationship between the plaintiff and his employer.  If the promotion would give rise to such a new relationship, the one year period of Article 3492 is applicable.  If the circumstances of the promotion would not result in a new and distinct relationship between the plaintiff and the City-Parish, then the four year prescriptive period under federal law would apply.").

It is not clear in this case whether the nature of the changes in positions allegedly sought by Liddell involved the opportunity to enter into a new contract with NGSB, in order for the Court to ascertain whether the three year state or the

four year federal limitations period should apply.  *See Jones*, 541 U.S. at 382;

*Patterson*, 491 U.S. at 186.  Out of an abundance of caution, the Court will apply the

longer four year limitations period here.[4]  Because the original Complaint in this

action was filed on March 21, 2001, Liddell cannot recover under Section 1981 for

any acts occurring before March 21, 1997.

C.  Liddell's Claims

      Liddell's racial discrimination claims fall into four categories: (1) denial of

promotions; (2) denial of sea trials and/or offsite trips; (3) "racial job tracking"; (4)

disparate treatment regarding imposition of discipline; (5) denial of training; and (6)

hostile work environment.  The Court will analyze each in turn.

      1.  Failure to Promote

      Liddell, an African-American, specifically charges that she has applied for

certain promotive positions, and although qualified, she was not selected because of

her race.  Compl., ¶¶ 20–23.  She states that she "has never been promoted in spite

of plaintiff [sic] 18 years at NGSS."  *Id.*, ¶ 20. She claims that Caucasian employees

with less training and experience at NGSB routinely received promotions.  *Id.*, ¶¶

20–23.  Liddell identifies the following instances in which she was allegedly not

promoted based upon her race:

      a) In 1996, plaintiff applied and was interviewed for a job as Paint
      Supervisor.  After the interview, she was told they was [sic] not hiring at
      this time.  The job Was [sic] then given to a White applicant who had
      applied and interview [sic] at the Same [sic] time plaintiff interview [sic]
      for the position.  Plaintiff had previously Trained [sic] with the White

_____

    [4]Applying either the four year federal or the three year Mississippi statute of
limitations to the facts of this case does not change the outcome.

applicant who was promoted over her to the position plaintiff was denied because of her race.
b) In 1998, Plaintiff applied for QA Inspector, a position for which plaintiff was qualified, but for which she was not selected because of her race.
c) In 2000, plaintiff applied for Administrative Aid [sic], a position for which plaintiff was qualified, but for which he [sic] was not selected because of her race.

Compl., ¶ 20.

Liddell also charges that she "has make [sic] it known that she has been interested in being selected for the position of 'leaderman' or 'half-hat,'" but that she "has never been selected for the position in spite of her 18 years at NGSS." *Id.*, ¶ 22.

NGSB argues that Liddell's own testimony establishes that her work leaderman claim is meritless, because she was never denied any promotion. Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 7. When asked whether she was ever denied any promotion to work leaderman because of her race, Liddell answered: "If I've acted as a work leaderman, been doing a work leaderman job, they haven't denied me work leaderman. . . . But what they denied me was my pay." Aug. 18, 2011, Dep. of Tammi Liddell, at p. 29, attached as Ex. "F" to Def.'s Mot. for Summ. J. When asked about any other instance where she had been denied any promotion to work leaderman because of her race, Liddell responded as follows: "Have I been denied work leaderman because of my race? Not work leaderman. Because I worked as work leaderman, like I'm trying to tell you. But I wasn't getting paid. Well, I'm denied because the whites are getting paid." *Id.* at pp. 29–30.[5]

---

[5]Liddell has not raised any disparate compensation claims in her Complaint. Nor is such a claim asserted in her EEOC Charge of Discrimination [407-1]. To the extent her statements could be construed to raise such a claim, summary judgment is nevertheless appropriate. To make out a *prima facie* case of discrimination in compensation, Liddell

In order to establish a *prima facie* case of discrimination for failure to promote under either Title VII or Section 1981, Liddell must establish each of the following four elements: 1) that she is within a protected class; 2) that she was qualified for the position sought; 3) that she was not promoted; and 4) that the position was filled by someone outside the protected class.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (citing *Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)); *see Thomas v. Staple Cotton Discount Corp.*, 182 F. App'x 337, 338, 2006 WL 1490051, *1 (5th Cir. 2006) (stating that Title VII and Section 1981 require the same proof on a racial discrimination claim for failure to promote).

There is no dispute in this case that Liddell is a member of a protected class. However, Liddell has not shown that she was not promoted to a position which she sought.  Liddell has not made out a *prima facie* case on the failure to promote to work leaderman.  This claim fails under both Title VII and Section 1981.

Though Liddell does not raise any demotion claim in her Complaint, during her February 14, 2006, deposition, she claimed that she was working as a work leaderman and was demoted without being given an explanation.  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 32, attached as Ex. "E" to Def.'s Mot. for Summ. J.  To the extent that this statement could be construed as a demotion claim, the Court

---

must show that she was a member of a protected class and that she was paid less than a non-member for work requiring substantially the same responsibility.  *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).  Liddell has not identified any specific, better-paid employee who is not a member of the protected class, and she has not presented competent summary judgment evidence that her pay was lower than any such employee. Liddell's bare, unsubstantiated allegations that she was being paid less than Caucasian employees are insufficient to survive summary judgment.  *VRV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.").

finds that Liddell has likewise failed to establish a *prima facie* case of

discrimination.  In order to establish a *prima facie* case for the alleged demotion,

Liddell must show, among other things, that she was replaced by a person who is not

a member of the protected class.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th

Cir. 2004).  Liddell testified that she did not know who became work leaderman after

she was demoted, nor did she know the person's race.  Feb. 14, 2006, Dep. of Tammi

Liddell, at p. 32, attached as Ex. "E" to Def.'s Mot. for Summ. J.  Liddell has

submitted no summary judgment evidence to establish this element of her *prima*

*facie* case.  Accordingly, summary judgment in NGSB's favor is appropriate on this

claim.

NGSB contends that all of Liddell's remaining promotion claims are barred by

the doctrine of *res judicata*, and that the 1996 claim is further barred by judicial

estoppel and the statute of limitations.  Def.'s Mem. Br. in Supp. of Mot. for Summ.

J. at p. 7.  NGSB argues that summary judgment is appropriate on the merits of

these claims as well, as Liddell "has no evidence that she was denied any of the

promotions because of her race."  *Id.*

As explained above, Liddell cannot recover for any promotion denials

occurring before March 21, 1997.  Liddell's claim regarding the denial of the

promotion to Paint Supervisor in 1996 is time barred.  This discrete claim is also

barred by the doctrine of judicial estoppel, and it has already been dismissed by this

Court's Order [406] entered on August 29, 2011.

With respect to her two remaining denial of promotion claims in 1998 and

2000, NGSB maintains that Liddell has failed to establish a *prima facie* case because

-14-

she does not know the identities of the persons who received the promotions.  Def.'s
Mem. Br. in Supp. of Mot. for Summ. J. at p. 7.  Nor does she know the race of these
individuals.  *Id.*  Finally, NGSB maintains that Liddell has conceded that she did not
believe she was denied the jobs based upon her race.  *Id.*

As to the QA Inspector promotion in 1998, Liddell testified that she did not
know who received this promotion, and she did not know anything about his or her
qualifications.  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 25, attached as Ex. "E" to
Def.'s Mot. for Summ. J.  When she was asked,

> [a]t the time that you were notified or when you learned that you did not
> get the Q&A [sic] position, did you believe that your race was a factor and
> reasoning [sic] for not getting that position?

*Id.* at p. 27.  Liddell's response was, "No, not that job."  *Id.*

As for the administrative aide position in 2000, Liddell acknowledged that she
did not know who was hired for this position.  Feb. 14, 2006, Dep. of Tammi Liddell,
at p. 27, attached as Ex. "E" to Def.'s Mot. for Summ. J.  When queried whether she
felt her race was a factor in not being selected for that position, Liddell testified
"No."  *Id.* at p. 29.

In her Response to NGSB's Motion, Liddell states that "[n]on-promotion . . . is
still going on[.] Discrimination more than ever before."  Resp. [409], at p. 2.  Though
she signs her Response, Liddell has presented no sworn affidavit and makes no
unsworn declaration, verification, or statement under penalty of perjury.  *See* 28
U.S.C. § 1746.  No competent summary judgment evidence has been offered as to the
truth of these assertions.  Such bare, unsubstantiated allegations in her Response
are insufficient to withstand summary judgment.  *VRV Dev. L.P. v. Mid–Continent*

*Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.").

Liddell has failed to establish a *prima facie* case of discrimination for failure to promote. *See Oden*, 246 F.3d at 468.[6]  NGSB is entitled to judgment as a matter of law on these promotion claims.[7]

2.    Denial of Sea Trials and Offsite Trips

Liddell contends that, despite making her supervisor aware that she desired to be chosen to do so, she "has never been selected to participate in sea trial and/or off site [sic] in spite of being qualified to be chosen, while he [sic] similarly situated White colleagues have overwhelmingly been selected to do so."  Compl., ¶ 24.  NGSB points out that Liddell has no evidence to support this claim.  Def.'s Mem. Br. in Supp. of its Mot. for Summ. J., at p. 10.  Liddell testified that she never requested to go on sea trials, and when asked if she had complained to anyone, she stated "I don't desire to go on the sea trials."  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 26, attached as Ex. "E" to Def.'s Mot. for Summ. J.

NGSB has demonstrated that there is no dispute of material fact and that it is entitled to judgment as a matter of law on this claim.  Moreover, Liddell's allegation of disparate treatment because she was given less favorable work assignments than

---

[6]Even if the 1996 paint supervisor promotion claim was not barred by the statute of limitations and the doctrine of judicial estoppel, summary judgment would nevertheless be appropriate.  Liddell testified that she did not know who received this promotion.  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 26, attached as Ex. "E" to Def.'s Mot. for Summ. J.

[7]Because the Court has determined that summary judgment is appropriate on Liddell's denial of promotion claims, it need not reach NGSB's argument that *res judicata* also bars them.

other employees is insufficient to sustain a disparate treatment claim because she

alleges no "ultimate employment decision." *Ellis v. Principi,* 246 F. App'x 867, 870,

2007 WL 2510620, *2 (5th Cir. 2007).  Summary judgment on these claims is

therefore appropriate.

      3.   <u>Racial Job Tracking</u>

      Liddell contends that she was subjected to "racial job tracking" by being

assigned jobs which were more undesirable, dirtier, and more dangerous than those

of white employees.  Compl., ¶ 25.  She alleges that

> a)    Plaintiff and other Black insulators have been forced to work in situations Such [sic] as the Engine Rooms, Amrs, [sic], Passageways, Sonar Dome climbing down stair [sic] with a tools bag, paint. [sic]
>
> b)    Plaintiff has had to crawl on hands and knees, stomach [sic] in confined tight spaces.
>
> c)    Plaintiff was forced to work on those greasy slick Oil Riggs [sic] when the was [sic] brought to NGSS to be worked on in the 1990. [sic] White employees were either not assigned such work or they would be allowed to remove their themselves [sic] from that assignment[.]
>
> d)    For several months during the year 1998, plaintiff was required to work on the Venezuelan Armada's LUPO class frigates while similarly situated White employees were either not assigned such work or would be allowed to remove themselves from that assignment.  Plaintiff was forced to work amid raw sewage and hepatitis contamination on the LUPO class frigates.

*Id*.

      NGSB argues that Liddell's disparate treatment claim is barred by the

doctrine of *res judicata*.  Assuming, without deciding, that Liddell's claim is not

barred, her claim cannot succeed on its merits.  In order to survive summary

judgment on this claim, Liddell must show that: (1) she is a member of a protected

class; (2) she was qualified for her position; (3) she was subject to an adverse

employment action; and (4) others similarly situated were treated move favorably. *Okoye v. Univ. of Tx. Houston Health Science Center*, 245 F.3d 507, 512–13 (5th Cir. 2001). Of relevance here, Liddell must show that she suffered an adverse employment action. *Id.* "Adverse employment actions have been held to include ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating. They have been held inapplicable to minor management decisions such as negative reference giving." *Thompson v. Sanderson Farms, Inc.*, 2006 WL 2711497, *8 (S.D. Miss. Sept. 21, 2006).

Even assuming that Liddell's allegations are true, this purported disparate treatment is not actionable, because Liddell alleges no ultimate employment decision. *Ellis v. Principi,* 246 F. App'x 867, 870, 2007 WL 2510620, *2 (5th Cir. 2007) (holding that allegation that plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision). Based upon the record before the Court, NGSB is entitled to summary judgment on this claim.

4.     Disparate Treatment Regarding Imposition of Discipline

Liddell claims that she "has been subject to disparate treatment with regard to the imposition of discipline for actual or alleged transgressions for which plaintiff is informed and believes similarly situated White employees are not discipline." [sic] Compl., ¶ 27. NGSB contends that it is entitled to summary judgment on this claim because it is not actionable and Liddell has no evidence to support it.

To make out a *prima facie* case, Liddell must show an adverse employment action. *Okoye*, 245 F.3d at 512–13. Liddell has supplied no competent summary

judgment evidence that any disciplinary warnings she received resulted in any type of reduced wages, terminations, or layoffs, or any other ultimate employment action. Accordingly, this claim is not actionable under either Title VII or Section 1981. *See id.*

> Liddell testified in her deposition as follows:
>
> Q.   Let me ask you this.  Do you claim you've ever been given unfair disciplinary warnings?
> A.   Yes.  That's what it says here.  I have.
> Q.   Okay.  What warnings?  Warnings for doing what?
> A.   I can't recall exactly what it was.  But I know one time I got the union involved about a warning slip that was put in my file.
> Q.   Okay.  Just one warning slip?
> A.   I can't recall.
> Q.   Okay.  Is that the only – the only rec – recollection you have of having an unfair warning?
> A.   I just can't recall at this time.
> Q.   Do you remember who gave it to you?
> A.   I can't recall.
> Q.   All right.  Do you claim that you got that because of your race?
> A.   I can't recall.

Aug. 16, 2011, Dep. of Tammi Liddell, at pp. 64–65, attached as Ex. "F" to Def.'s Mot. for Summ. J.

Liddell offers no competent summary judgment evidence that similarly situated employees were treated move favorably. *See Okoye*, 245 F.3d at 512–13. Her subjective belief that she was discriminated against is insufficient to avoid summary judgment. *Watts v. Energy Operations, Inc.*, 247 F.3d 241, 2001 WL 43541, *2 (5th Cir. 2001) (citing *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996)).  Liddell has not carried her summary judgment burden as to this disparate treatment claim.

5.    Denial of Training

Liddell alleges that she

> has made her supervisor(s) aware that she desired to receive certain supervisory training.  However, he [sic] was denied training in spite of being qualified, while her similarly situated White colleagues have received such training.

Compl.,¶ 28.

When asked whether she was claiming that she had been denied any requests to train at the shipyard, Liddell answered "No."  Feb. 14, 2006, Dep. of Tammi Liddell, at pp. 31–32, attached as Ex. "E" to Def.'s Mot. for Summ. J.  When queried if she had applied for a presupervisory training program at the shipyard, she stated, "I can't remember."  Aug. 16, 2011, Dep. of Tammi Liddell, at p. 28, attached as Ex. "F" to Def.'s Mot. for Summ. J.

In order to survive summary judgment on her denial of training claim, Liddell must establish a *prima facie* case of discrimination.  Liddell has presented no competent summary judgment evidence that she was actually denied supervisory training.  Even if she was, Liddell has not shown that she suffered an adverse employment action.  *See Okoye*, 245 F.3d at 512–13.  In response to interrogatories posed by NGSB, which asked Liddell "whether you claim you have ever been denied a promotion or other opportunity based on a lack of training," Liddell answered that she "was never denied because of lack of training."  Interrog. No. 34, at p. 22, attached as Ex. "G" to Def.'s Mot. for Summ. J.

Reviewing the record before it, considering all undisputed facts, and resolving all disputed facts in Liddell's favor, the Court cannot conclude that she has

demonstrated that she suffered an adverse employment action with respect to the alleged denial of supervisory training. *See Hollimon v. Potter*, 365 F. App'x 546, 548, 2010 WL 338020, *2 (5th Cir. 2010) (holding that "a refusal to train is not an adverse employment action under Title VII"); *Earle v. Aramark Corp.*, 247 F. App'x 519, 523, 2007 WL 2683821, *2 (5th Cir. 2007) (holding that being denied access to training and leadership courses was not considered adverse employment decisions for purposes of sex discrimination). Liddell has failed to establish a *prima facie* case of discrimination as to this claim, and summary judgment is appropriate.

      6.    <u>Hostile Work Environment Claim</u>

      Liddell contends that throughout her employment at NGSB, she was subjected to racial hostilities and intimidation. Specifically, Liddell alleges that she has been exposed to offensive racially derogatory writings, depictions, or graffiti in the following instances:

    a)    Plaintiff has seen offensive racially derogatory graffiti on the restroom walls on both banks.
    b)    Plaintiff has seen the words "nigger" written on the restroom walls through the late 1990s.

Compl., ¶ 29. Liddell also maintains that she has been exposed to racial epithets and observed nooses in the shipyard, and that NGSB knew of these occurrences but failed to promptly prevent or correct them. *Id.*, ¶¶ 30–32, 35.

      NGSB contends that this alleged conduct is insufficient to establish a *prima facie* case of discrimination. Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 13. It maintains that Liddell was not subjected to sufficiently severe or pervasive harassment which created an abusive working environment or which interfered with

her ability to work.  *Id.*

To establish a *prima facie* case of a hostile work environment, Liddell must show that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment affected a term, condition, or privilege of employment; and (4) the employer knew or should have known about the harassment and failed to take prompt remedial action.  *Howard v. United Parcel Serv., Inc.*, 2011 WL 5138719, *5 (5th Cir. Oct. 31, 2011) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir.2007)).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996)(Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999).  Thus, not only must Liddell have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or

abusive.  *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.  *Id.* at 23.  No single factor is determinative.  *Id.*

Liddell claims that she observed the presence of hangman's nooses in the NGSB shipyard.  Compl., ¶ 30.  She testified that she had seen nooses "laying around," "on the boat" in the shipyard.  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 40, attached as Ex. "E" to Def.'s Mot. for Summ. J.  When questioned about her response to a discovery interrogatory which asked her to "[s]tate whether you have observed a noose at Northrop Grumman or seen white employees at Northrop Grumman making nooses. . .," to which she replied, "NA," Liddell testified as follows:

> Q.   Okay.  The next one, interrogatory sixty-one, says: State whether you observed a noose at Northrop Grumman.  And against you put NA.  That's because you never –
> A.   Sixty –
> Q.   – saw a noose at the shipyard; right?
> A.   I'm not answering any more questions.  It's two o'clock.  And I can't recall.

Aug. 16, 2011, Dep. of Tammi Liddell, at p. 67, attached as Ex. "F" to Def.'s Mot. for Summ. J.; Interrog. No. 61, at p. 43, attached as Ex. "G" to Def.'s Mot. for Summ. J.

Liddell had earlier confirmed that her "NA" responses to the interrogatories meant not applicable.  Aug. 16, 2011, Dep. of Tammi Liddell, at p. 64, attached as Ex. "F" to Def.'s Mot. for Summ. J.

In an earlier deposition from an arbitration proceeding in another case,

Liddell had testified as follows:

> Q.   During – during the times that you have worked with or around
>      Ms. Holifield, have you ever seen a noose in the shipyard?
> A.   During the time that I worked around Ms. – I can't remember.
> Q.   Have you seen any noose in the shipyard since 1990?
> A.   I can't remember the dates.  I just can't remember.  I thought we
>      was [sic] going to ask about Ms. Holifield.

July 29, 2009, Dep. of Tammi Liddell, at p. 16, attached as Ex. "J" to Def.'s Mot. for
Summ. J.

Liddell has not presented evidence that she saw nooses within the actionable time

period for statute of limitations purposes.

Liddell further contends that she was subjected to racial epithets.  Compl., ¶

32.  She testified as follows:

> Q.   Have you ever heard someone at the shipyard use the N word in
>      your presence?
> A.   Yes.
> Q.   Do you recall when that was?
> A.   No, I don't.
> Q.   Was the individual white or black?
> A.   White.

Feb. 14, 2006, Dep. of Tammi Liddell, at p. 39, attached as Ex. "E" to Def.'s Mot. for
Summ. J.

Liddell testified in another plaintiff's arbitration case as follows:

> Q.   Have you ever heard any white employee at the shipyard use the N
>      word?
> A.   Yes.
> Q.   Can you tell me how many times?
> A.   Couple times.
> Q.   Do you remember who?
> A.   Fred Young.
> Q.   Did you make any complaints about it?
> A.   I made it known, yes, I did.
> Q.   To who?

> A.    I don't know who I made it known to, but it was in management, you know, I didn't appreciate the remarks he always makes. [sic]
>
> Q.    He's the only person you ever heard use that term at the shipyard?
>
> A.    That I have heard, yes.
>
> Q.    But you don't remember to whom you complained?
>
> A.    No, I don't.
>
> Q.    Can you tell me when that was?
>
> A.    I don't know the exact time frame.
>
> Q.    Has it been in the last – you've been there twenty years. Has it been in the last ten years, or do you know?
>
> A.    Yes.
>
> Q.    Okay. And you said a couple of times, so twice?
>
> A.    Yes. Couple.
>
> Q.    Have both times been in the last ten years?
>
> A.    Yes.
>
> Q.    Was anyone else present?
>
> A.    I can't remember.

Dec. 10, 2008, Dep. of Tammi Liddell, at pp. 5–6, attached as Ex. "K" to Def.'s Mot. for Summ. J.

Liddell later testified as follows:

> Q.    Take a look on page forty-three, if you would. Interrogatory number sixty asks you to state whether you have ever heard the N word – and we know what we – we're talking about when we use the N word – whether you've ever heard the N word at the shipyard and if so when you heard it, who said it and who witnessed it. And you wrote NA. Do you see that? Do you see that?
>
> A.    Yes, I do.
>
> Q.    And that's because you never heard the N word at the shipyard; right?
>
> A.    Yes, I have heard it.
>
> Q.    Okay. Why did you put NA there?
>
> A.    State the basis of your con – contention in paragraph seventeen of the complaint that the continuous use of the term [sic] by white employees or managers is a badge or incident of slavery and whether you ever heard the term at Northrop Grumman.
>
> Q.    You put NA there because you'd never heard it; right?
>
> A.    Yes, I have.
>
> Q.    Okay. Why did you put NA there?
>
> A.    I guess it was Ingalls at the time. It wasn't Northrop Grumman. But during the time at Ingalls, I had heard it. But Northrop Grumman – that was a different time frame.

Q.    Okay.  Are you saying you heard Mr. Young use it?
A.    Yes.
Q.    Okay.  Can you tell us what decade you heard him use it?
A.    I can't tell what decade.  But it was the decade of – it was during
       the time it was Ingalls before.
Q.    Okay.  It might have been in the 1980s?
A.    I can't – I can't recall.

Aug. 16, 2011, Dep. of Tammi Liddell, at pp. 65–67, attached as Ex. "F" to Def.'s Mot.
for Summ. J.

As NGSB points out, the Interrogatory General Instructions and Definitions define

"Northrop Grumman" as including "Northrop Grumman Ship Systems, Inc. and its

predecessor, Ingalls Shipbuilding, Inc."  Interrog., at p. 2, attached as Ex. "G" to

Def.'s Mot. for Summ. J.

The Fifth Circuit "has found that a regular pattern of frequent verbal ridicule

or insults sustained over time can constitute severe or pervasive harassment

sufficient to violate Title VII."  *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393,

400 (5th Cir. 2007) (citing *Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000);

*Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996)).  However,

offhand comments and isolated incidents, unless extremely serious, will not amount

to discriminatory charges which can survive summary judgment.  *Turner v. Baylor*

*Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Hockman v.*

*Westward Communications, LLC,* 407 F.3d 317, 328 (5th Cir. 2004)).  Liddell has

identified two racial epithets by a single employee over the course of the past ten (10)

or so years of her employment at the shipyard.   Based on the evidence before it, even

assuming all of these incidents occurred within the relevant time period, the Court

cannot say that there existed a regular pattern of frequent verbal ridicule or insults

directed towards Liddell.

Liddell also asserts that she was exposed to racially derogatory writings, depictions, and graffiti on numerous occasions during her tenure at NGSB.  Compl., ¶ 32.  Liddell testified in an arbitration case that "graffiti used to be a common thing in the restrooms."  July 29, 2009, Dep. of Tammi Liddell, at p. 16, attached as Ex. "J" to Def.'s Mot. for Summ. J.  In another arbitration deposition taken in December 2008, Liddell testified that the last time she had seen graffiti which she believed to be racially offensive was about ten years earlier.  Dec. 10, 2008, Dep. of Tammi Liddell, at p. 5, attached as Ex. "K" to Def.'s Mot. for Summ. J.  This would mean she witnessed this graffiti around 1998.  Liddell did not complain about the graffiti on the bathroom walls.  Feb. 14, 2006, Dep. of Tammi Liddell, at p. 32, attached as Ex. "E" to Def.'s Mot. for Summ. J.  When asked if seeing graffiti on the walls affected her ability to perform her job, she testified that "[t]hings like that just makes [sic] me stronger, makes me better."  *Id.*

Applying the *Harris* factors to this case, Liddell has not shown the frequency or severity of any racially offensive actions or graffiti during the relevant time period.  While the alleged instances were offensive, Liddell has not demonstrated that any of the incidents during the relevant time period were physically threatening or humiliating.  *Harris,* 510 U.S. at 21-22.  Nor has Liddell shown that they interfered with her work performance.  *Id.* at 23.

In her Response to NGSB's Motion for Summary Judgment, Liddell states that "[h]ostile work environment is still going on[.] Discrimination more than ever before."  Resp. [409], at p. 2.  Though she signs her Response, Liddell has presented

no sworn affidavit and makes no unsworn declaration, verification, or statement under penalty of perjury. *See* 28 U.S.C. § 1746. No competent summary judgment evidence has been offered as to the truth of these assertions. These bare, unsubstantiated allegations in her Response are insufficient to survive summary judgment. *VRV Dev. L.P.*, 630 F.3d at 455 ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.").

Based upon the totality of the circumstances, the competent summary judgment evidence does not create a material fact question precluding summary judgment on Liddell's hostile work environment claim.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that NGSB is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons more fully stated herein, the Motion for Summary Judgment [407] of Defendant, Northrop Grumman Shipbuilding, Inc., filed September 15, 2011, is **GRANTED,** and Liddell's claims against Defendant are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 27th day of December, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE